FILED
2013 Sep-30  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **LATRICE LYN COLVIN,** | ) | |
| | ) | |
| **Claimant** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 5:11-CV-04313-KOB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On July 15, 2008, the claimant, Latrice L. Colvin, applied for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, respectively.  The claimant alleges disability commencing on June 6, 2008 because of pain from a broken back.  The Commissioner denied the claims both initially and on reconsideration.  The claimant filed a timely request for a hearing before an Administrative Law Judge, and an ALJ, Joseph P. Donovan, Sr., held a hearing on August 10, 2010.  (R. 11, 152).  In a decision dated October 25, 2012, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for both disability insurance benefits and supplemental security income. (R. 19).  On October 27, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration.  (R. 1).  The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons stated below, this court reverses the decision of the Commissioner.

## II. ISSUE PRESENTED

The court addresses the following issue on review: (1) whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

 "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings."  *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must first consider whether the claimant demonstrated an underlying medical condition, and then "*either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. FACTS

The claimant has a 12th grade education and was thirty-one at the time of the administrative hearing. (R. 30). Her past work experiences include employment as a

housekeeper, fast food worker, and line worker.  (R. 17).  The claimant testified that injuries from a motor vehicle accident cause her upper and lower back pain.  (R. 31).

*Physical Limitations*

On June 7, 2008, the claimant was involved in a motor vehicle accident.  (R. 13).  On June 8, 2008, Dr. Margaret McKernan reported superior endplate fractures of the spine at T8, T11, T12 and L1.  At the L1 superior endplate, Dr. McKernan observed a "retropulsion of approximately 2 mm of bone into the central spinal canal."  (R. 227-29).  Further reports indicated "no compromise of the spinal canal."  (R. 317).  On June 11, 2008, Dr. Paul G. Matz prescribed one to two tablets of Lortab every four to six hours for the pain and discharged the claimant from the hospital.  (R. 315).  On July 11, 2008, the claimant returned for a follow-up with Dr. Matz with continued back pain.  Dr. Matz kept her on 7.5mg of Lortab, as needed, and additionally prescribed her Percocet.  (R. 328).

On November 14, 2008, Dr. Scott Powers treated the claimant for her continued back pain.  He refilled a prescription for Norco 10 mg.  He further noted that she would continue her Flexeril and possibly try Skelaxin.  Dr. Powers also stated that the claimant had been in too much pain to continue with her physical therapy.  On December 15, 2008, Dr. Powers noted that the claimant was functioning fairly well and doing housework.  He continued with Norco and Skelaxin, and discontinued Flexeril.  On January 16, 2009, Dr. Powers reported that claimant took four Norco a day and that she stated they lasted only an hour.  He then refilled her Norco prescription, this time for a "name brand" version, advised her to occasionally add a Tylenol to her dosage, and scheduled an MRI.  On February 23, 2009, Dr. Powers reported that the MRI revealed multiple Schmorl's nodes.  However, he observed no disc herniation or evidence of radiculopathy.  He recommended initiating physical therapy and a trial of traction.  (R. 338-43).

On June 6, 2009, Dr. Marcus Whitman completed a physical residual function capacity assessment.  Dr. Whitman opined that the claimant could occasionally lift twenty pounds; frequently lift ten pounds; and sit, stand and/or walk for about six hours in an eight hour working day.  (R. 330).

On April 16, 2009 at the Dodge City Medical Clinic, Dr. Richard Bucco began treating the claimant for her chronic back pain.  (R. 366).  On June 30, 2009, the claimant reported that her back pain was as high as ten out of ten and that standing and physical activity made it worse.  (R. 360-62).  Records indicate that Dr. Bucco continued treating the claimant's pain until at least July of 2010.  (R. 433-97).

On March 16, 2010, the claimant reported that a few days earlier she was in another car accident that increased her pain.  At the emergency room, the claimant received a Medrol dose pack.  A nurse at the Dodge City Medical Clinic allowed the claimant to take up to four Lortabs a day in response to the increase in pain.  (R. 456).

On May 25, 2010, Dr. Christopher C. LaGanke noted that the claimant was not seeing improvements from Mobic or Lipoderm patches.  The claimant stated her neck popped frequently and rated her lower back pain as an eight out of ten.  Dr. LeGanke listed the claimant's medications as 10 mg of Flexeril twice daily, 10 mg Hydrocodone three times daily, and 15 mg of Mobic once daily.  Dr. LeGanke then prescribed the claimant a cane.  (R. 429-30).  A medical record from July 28, 2010 indicates that the claimant also had a prescription for a 25 mg Deragesic Patch.  (R. 369).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for both disability insurance benefits and supplemental security income, the claimant requested and received a hearing before

an ALJ.  (R. 26).  At the hearing, the claimant testified that pain in her lower and upper back prevented her from returning to work.  (R. 31).

She testified that she would need two hours a day to lie down because of her pain.  (R. 32).  However, she also testified that if she were active for fifteen minutes to an hour she would need an hour to lie flat on her back.  She testified that this was because of her back pain that would radiate down into her right leg.  (R. 33).

The claimant testified that she could not stand for more than fifteen minutes before her back pain became a problem.  She also testified that she could not walk more than a quarter mile before her pain would become a problem.  She even testified that on the day of the hearing she had to pause before making it from the parking lot to the hearing office.  She stated that she did not believe she could walk a city block and would have to stop to rest after half a mile.  (R. 34). Overall, she estimated her pain without medication was a nine out of ten and with medication was a seven out of ten.  (R. 34).

Regarding her daily activities, the claimant testified that she could only go to Wal-Mart for thirty minutes.  She testified that she would get a motorized car rather than attempt to walk in the store.  She testified that the back pain hindered her ability to do the laundry and prevented her from doing her housework.  She also stated that her pain required her to stand up or recline while sitting in church for two hours.  (R. 34-36).

Next, the ALJ called Dr. Chukwuemeka Ezike[1] to testify as a nonexamining medical expert.  Dr. Ezike reviewed the record and opined that the claimant would be able to lift ten pounds occasionally and less than ten pounds frequently; stand and walk only two hours in a day without breaks; would need a sit/stand option at will; and could rarely bend, stoop, crawl, or

_____

[1] The hearing transcript spells Ezike as Ezkie.  The ALJ's decision, however, correctly spells it as Dr. Ezike.  (R. 24, 16).

kneel.  (R. 36-38).  He further characterized the claimant's pain as intractable yet treatable with medication.  (R. 40).

A vocational expert, Susan Entenberg, testified as to the type and availability of jobs the claimant would be able to perform.  The ALJ asked whether a hypothetical individual – who could lift and carry only ten pounds occasionally and less than ten pounds frequently; could sit only two hours in an eight hour day; could only stand and walk for two hours out of an eight hour work day; required a sit and stand option at will in two hour increments; could rarely bend, stoop, crawl, or kneel; needed a back brace and a cane; and would miss five percent of the work day to medication – could perform any of the claimant's past relevant work.  Ms. Entenberg responded that such an individual could not.  In response to the ALJ's question about what jobs such an individual could perform, Ms. Entenberg clarified that the hypothetical individual would not need the cane for standing, only for support.  She then testified that such a person could work as an assembler, inspector or information clerk.  Because the DOT does not address a sit/stand requirement, Ms. Entenberg reduced the overall availability numbers for these jobs based on her experience.  She still found that these positions would be available to the claimant in significant number.  (R. 43-46).

*The ALJ's Decision*

On October 25, 2010, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act.  (R. 19).  The ALJ found that the claimant met the insured status requirements of the Act and had not engaged in substantial gainful activity since the alleged onset of her disability.   Next, the ALJ found her spinal fractures qualified as a severe impairment.  (R. 13).  However, the ALJ determined that this impairment did not manifest the specific signs and diagnostic findings required by the listing of impairments.  The ALJ then

found that the claimant had a residual functional capacity ("RFC") to lift and carry less than ten pounds occasionally; sit for two hour intervals for a total of six hours; stand and walk for two hours in an eight hour day; frequently use hand, arm, and leg controls; rarely stoop, kneel, crouch, and crawl; never be exposed to extreme temperatures or whole body vibrations; and stay on task for only ninety-five percent of the day. He also stated that she required a sit/stand option at will. (R. 14).

In making this assessment, the ALJ considered the claimant's subjective allegations of pain. He determined that her medically determinable impairment could reasonably be expected to cause the underlying symptoms but that her testimony was not credible to the extent it was inconsistent with his RFC assessment. (R. 16).

In determining the claimant's credibility, the ALJ cited the inconsistency between her reported daily activities of living and her statements to her physicians that she could perform "low impact activities and her activities of daily living." He further noted that the objective medical evidence on record does not substantiate her claims. He stated that the record demonstrated that medication was "generally effective" in controlling the claimant's pain. (R. 16)

The ALJ then assessed the credibility of the claimant's physicians. First, he noted that treating physicians Dr. Matz and Dr. Powers did not indicate any contradictions with his RFC findings. Next, he attributed great weight to the testimony of Dr. Ezike, a non-examining physician. Finally, the ALJ noted that Dr. Whitman's assessment was only entitled to "some weight," because Dr. Whitman examined the patient without the entire medical record. (R. 16-17).

The ALJ determined that, based on this RFC, the claimant could not return to any past relevant work.  The ALJ then considered the claimant's age, education, work experience, and RFC to determine that significant jobs exist in the national economy that the claimant can perform.  He cited the jobs of assembler, inspector, and information clerk referenced by the vocational expert.  Thus, he determined that the claimant is not disabled under the Social Security Act.  (R. 17-18).

## VI. DISCUSSION

The Claimant contends that the ALJ improperly applied the three-part pain standard.  The court agrees that the ALJ improperly applied the pain standard and that substantial evidence did not support his decision to discredit the claimant's testimony.

When a claimant attempts to establish disability through her testimony of pain or other subjective symptoms, the three-part pain standard applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  To meet the pain standard, a claimant must demonstrate "(1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain."  *Id*.  (emphasis added).  A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.  *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995).

The ALJ may discredit a claimant's subjective testimony of pain if he does so specifically and articulates his reasons for doing so.  *Brown*, 921 F.2d at 1236.  Failure to articulate adequate reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true.  *Id*.  However, "[a] clearly articulated credibility finding

with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (internal citations omitted).

In this case, the ALJ conceded that the claimant suffers from a medically determinable impairment that could reasonably cause the alleged symptoms; however, he found that the claimant's testimony as to the extent and severity of her symptoms was not credible.

The ALJ first stated that the claimant's statements to her doctors regarding her daily activities were inconsistent with her alleged daily activities. Specifically, he noted that the claimant stated she could do "low impact exercises and her activities of daily living." (R. 16). In the Dodge City Medical Clinic record cited by the ALJ, Dr. Bucco wrote: "Pt trying to perform low impact exercise in the form of walking. Able to perform activities of daily living." (R. 433). The ALJ, however, sells it short. This *exact* statement appears on nearly every Dodge City Medical Clinic record from April 2009 until July 2010. *See* (R. 490, 487, 484, 481, 478, 474, 471, 468, 463, 460, 451, 447, 440, 436, 433). The claimant apparently could not get out of Dodge without attempting to walk. While this note does not indicate that the claimant ever "stated that she is able to [do] low impact exercise[s]," (R. 16), it may very well indicate that she was attempting to walk and was generally functioning for over a year.

Even if Dr. Bucco advised the claimant to try walking at every visit – which the court finds, at best, unlikely – attempts to walk as treatment do not in any way contradict with the claimant's testimony. Nothing in the medical records indicate how far the claimant tried to walk, how long, how many times or how successful she actually was in her attempts. Dr. Bucco's boiler plate language about attempts to exercise as treatment does not provide substantial evidence to discredit the claimant's testimony about what she was actually able to do. Neither does his blanket assessment that she can perform activities of daily living. *See Pollard*

*v. Astrue*, 867 F. Supp. 2d 1225, 1232 (N.D. Ala. 2012) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir.1997)) ("'[P]articipation in everyday activities of short duration, such as housework or fishing' does not disqualify a claimant from disability.").

The ALJ then detracted from her credibility because "the claimant's treatment was generally effective in controlling the symptoms of her spinal fractures."  (R. 16).  In support of this contention, the ALJ again cited Dr. Bucco's oft-repeated treatment note, (R. 363), and Dr. Powers statement that the claimant was "functioning fairly well … [and] doing housework quite a bit."  (R. 341).  Dr. Bucco's statement and the claimant's ability to do an unspecified amount of housework, for the same reasons stated above, do not provide substantial evidence to support the ALJ's decision.

The ALJ also stated that her "limited daily activities cannot be verified with any reasonable degree of certainty."  (R. 16).  The court agrees.  The only thing directly supporting the claimant's allegations of the severity and impact of her symptoms is her testimony. However, that is all the law requires when objective medical evidence discloses a medical condition that could reasonably lead to such pain.  *See Foote*, 67 F.3d at 1561 ("A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."); *see also* 20 C.F.R. § 404.1529 ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

While the ALJ does not specifically state that he relies on Dr. Ezike's – a nonexamining physician – opinion to discredit the claimant's testimony, the court notes that the ALJ accorded his opinion great weight and based the RFC finding on it.  To be sure, "[t]he reports of reviewing

nonexamining physicians do not constitute substantial evidence on which to base an administrative decision." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (finding that the ALJ erred by using a nonexamining physician report to discredit a treating doctor). Thus, the ALJ could not rely solely on Dr. Ezike's opinion to discredit the claimant.

As the court stated in *Pollard*, the Commissioner "has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." 867 F. Supp. 2d at 1233 (quoting *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)).

Because the court finds this issue meritorious, the court declines to address the other issues presented by the claimant.

## VII. CONCLUSION

For the reasons stated, this court concludes that the ALJ applied improper legal standards and that substantial evidence did not support the decision of the Commissioner. This case is one where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). In such a case, the court "may … remand the case for an entry of an order awarding disability benefits. *Id*. (citing *Bowen v. Heckler*, 748 F.2d at 635–36). Thus, the decision of the Commissioner is to be REVERSED and REMANDED with instructions that the plaintiff be awarded the benefits claimed. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 30th day of September 2013.


_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE